NOAH G. BLECHMAN (State Bar No. 197167)
noah.blechman@mcnamaralaw.com
JOHN J. SWAFFORD (State Bar No. 321174)
John.Swafford@McNamaraLaw.com
McNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendant
RYAN REZENTES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALMIKA BATES, an individual, | Case No. C22-01097 AMO |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| RYAN REZENTES, in his individual capacity as a police officer for the CITY OF BRENTWOOD; and DOES 1-50, inclusive, | Date:    August 17, 2023[1]<br>Time:   2:00 p.m.<br>Dept:    USDC -SF; RM 10 - 19th Floor<br>Judge: Hon. Araceli Martinez-Olguin<br>Trial Date:    October 17, 2023 |
| Defendant. | |

---

[1] Per ECF 51, the Court just moved the hearing date from July 13th, to August 17th.  Defendants wanted to also note for the Court that this hearing date is only about 7 weeks prior to the Pretrial Conference of October 6th in this matter, not leaving too much time for an order from the Court prior to the Pretrial Conference and/or the prior deadlines for pretrial meet and confer and filings, nor evaluation by Defendant if any interlocutory appeal is appropriate pending the Court's order.

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. FACTUAL COMPARISON ................................................................................ 3

III. REPLY ARGUMENTS ...................................................................................... 4

      A.     The Limitation on Reasonable Inferences Favoring Opposing Party ..................... 4

      B.     Plaintiff's Factual Basis for Conviction Was Clearly Established and Bars Her Fourth Amendment Claim per *Heck* and its Progeny ........................................ 6

      C.     Rezentes' Deployment of the Canine Was Not Deadly Force ................................ 8

      D.     There Is a Strong Governmental Interest Warranting the Use of a Canine to Locate and Apprehend Plaintiff, A Concealed Felony Suspect ........................... 10

      E.     There Is No Clearly Established Law That Put Rezentes on Notice that His Deployment of Canine Marco To Apprehend a Concealed Felony Suspect Was Unconstitutional ....................................................................................... 11

IV. OBJECTIONS TO PLAINTIFFS' EVIDENCE ............................................. 15

V. CONCLUSION ................................................................................................ 15

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................ 5

*Angle v. Miller*, 673 F.3d 1122, 1134 n. 6 (9th Cir. 2012).......................................... 5

*Brewer v. City of Napa*, 210 F.3d 1093, 1098 (9th Cir. 2000)           ……………………………..8

*Briseno v. City of W. Covina*, 2021 U.S. Dist. LEXIS 250197, at *13 (C.D. Cal. Dec. 23, 2021).. 6

*Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) .......................................... 15

*D.C. v. Wesby*, 138 S.Ct. 577, 589-90 (2018) ................................................................ 11

*Dawson v. Cty. of Stanislaus*, 2023 U.S. Dist. LEXIS 26522, at *23-24 (E.D. Cal. Feb. 15, 2023)
................................................................................................................................ 13

*DePaul Indus.v. Miller*, 14 F.4th 1021, 1026 (9th Cir. 2021) .................................... 11

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) ............. 8

*Escobar v. Montee*, 895 F.3d 387, 395-96 (5th Cir. 2018) .......................................... 15

*Graham v. Connor*, 409 U.S. 386, 395-97 (1989) ........................................................ 9

*Hartsell v. Cty. of San Diego*, 2023 U.S. App. LEXIS 7417, at *1-2 (9th Cir. Mar. 29, 2023)….13

*Heck v. Humphrey,* 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)  ………...passim

*Hernandez v. Town of Gilbert*, 939 F.3d at 739, 744 (9th Cir. 2021)           …………....……11, 12

*Hope v. Pelzer*, 536 U.S. 730, 733 (2002)           …………....……………………………..14

*Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022)   ……………………………………12

*In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 533-534 (9th Cir. 1990) ...................... 5

*Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009)...................................................... 15

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)............................................ 5

*Lemos v. Cty. of Sonoma*, 40 F.4th 1002, 1005 (9th Cir. 2022).................................... 7, 8

*Lucas v. Leaseway Multi Transp. Serv.*, *Inc.*, 738 F.Supp. 214, 217 (E.D. Mich. 1990) ............... 5

*Martin v. City of San Jose*, 2020 U.S. Dist. LEXIS 185281, at *1-11 (N.D. Cal. Oct. 6, 2020).. 14

*Matsushita Elec. Indus. v. Zenth Radio Corp.*, 475 U.S. 574, 586 (1986)................................. 4, 5

*Mehta v. City of Upland*, 748 F.App'x 739, 742 (9th Cir. 2018)................................... 11

*Mendoza v. Block*, 27 F.3d 1357, 1358-1363 (9th Cir. 1994)...................................... 12

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1   *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ................................................ 15

2   *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003)   ……………………………………8, 12

3   *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) ................................................................. 11

4   *Ochoa v. Cty. of Kern*, 2023 U.S. Dist. LEXIS 28349, at *8 (E.D. Cal. Feb. 21, 2023) ................ 9

5   *Price v. Sery*, 513 F.3d 962, 968 (9th Cir. 2008) ............................................................. 10

6   *Rosenbaum v. Dunn*, 2022 U.S. Dist. LEXIS 224010, at *5-7 (N.D. Cal. Nov. 28, 2022) .......... 14

7   *Sanders v. City of Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021) ....................................... 6

8   *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ................................................................. 5

9   *Seidner v. de Vries*, 39 F.4th 591, 597 (9th Cir. 2022) .................................................... 9

10  *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) ....................................................... 11

11  *Sweiha v. Cty. of Alameda*, 2021 U.S. Dist. LEXIS 16681, at *3-5 (N.D. Cal. Jan. 28, 2021)12, 13

12  *Tennessee v Garner*, 471 U.S. 1, 8 (1985)   …………………………………………….........8

13  *Thomson v. Salt Lake County*, 584 F.3d 1304, 1321 (10th Cir. 2009)…………..…………..........15

14  *Watkins v. City of Oakland*, 145 F.3d 1087, 1090 (9th Cir. 1998)   ………………………...13, 14

15  *White v Pauly*, 137 S.Ct. 548 (2017)  …………………………………………………………11

16  *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022) ........................................ 9

17  **Statutes**

18  42 U.S.C. § 1983 ................................................................................................................. 6

19  Penal Code § 148(a)(1) ................................................................................... 1, 2, 6, 12

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1

## MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY

2

## I.  INTRODUCTION

3       In her opposition, Plaintiff has offered no genuine evidence to dispute the actual material

4  facts as demonstrated by the video and related evidence. Plaintiff, throughout her opposition, has

5  generalized the case facts and failed to evaluate the legal issues properly, pursuant to *Graham* and

6  its progeny, namely an evaluation of the totality of circumstances from the perspective of a

7  reasonable officer in the shoes of Ofc. Rezentes (Rezentes), not with hindsight, not with slow

8  motion or stop action analysis and not from Plaintiff's perspective.  From a reasonable officer's

9  perspective, in the shoes of a well-trained canine officer like Rezentes, the deployment of canine

10  Marco to locate multiple felony suspects concealed in dense trees/shrubbery in a large field adjacent

11  to a residential neighborhood was objectively reasonable and/or qualified immunity applies.

12       **Importantly, Plaintiff admits that "Defendant's initial deployment of the dog may be**

13  **justified on Plaintiff's refusal to reveal herself from a concealed location and validates the**

14  **148(a)(1) plea."**  Opp. (ECF 48), p. 24:16-17.  This key admission by the Plaintiff, not surprising

15  as it is consistent with the facts and video evidence, confirms that Rezentes' use of his canine to

16  locate and contact the "concealed" felony suspect (Plaintiff), who refused to "reveal herself from a

17  concealed location," demonstrates that no Fourth Amendment violation occurred and/or that

18  Rezentes is clearly entitled to qualified immunity for those actions.  If Rezentes may deploy the

19  canine to locate and contact the concealed felony suspect Plaintiff, then he has a right to continue

20  using that force (canine staying on the bite) until this concealed felony suspect appears to be under

21  control and/or no longer a potentially deadly or imminent threat.  Notably, the canine was removed

22  from Plaintiff event ***prior*** to her handcuffing.  This admission confirms qualified immunity applies,

23  at a minimum, in this case (though no Fourth Amendment can even be said to have occurred).

24       Additionally, <u>this critical admission</u> confirms Plaintiff's deposition testimony, which

25  directly impacts the *Heck* analysis, that her violation of Penal Code § 148(a)(1) (for actively

26  resisting, obstructing and/or delaying the officers, including Rezentes), was temporally based on

27  her entire behavior from the time she left Ulta and then fled the Murano on foot after ditching the

28  car, up until the time she was contacted by the canine from her "concealed location."  **Defendant's**

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**Exh. B**, 155:15-160:12.  While Plaintiff cannot readily argue around this point, Plaintiff concedes that this temporal behavior "validates" her Penal Code § 148(a)(1) conviction. If Plaintiff's excessive force claim is allowed to go forward, this would undercut Rezentes' use of force to get Plaintiff under control per her lawful arrest, directly undermining and invalidating this conviction (a conviction of which has to be based on the lawful conduct of Rezentes, otherwise Plaintiff could not have been convicted of this charge).  Per the evidence in the moving papers, coupled with this critical admission, the *Heck* bar applies here to disallow Plaintiff to undermine her conviction.

Should the Court even need to get to the merits, meaning Plaintiff can somehow hurdle the high *Heck* bar issue in this case, Plaintiff's irrelevant and misleading evidence should be disregarded for the Fourth Amendment and qualified immunity analysis.  For example, Plaintiff continuously mentions that she was unarmed. However, while Rezentes does not dispute that post-arrest discovered fact once Plaintiff was searched, he certainly did not know that at the time he deployed Marco to locate the multiple felony suspects, nor could he even see that in the dense bushes, so this fact is not germane to the Court's analysis here. Importantly, the Fourth Amendment analysis applies to only those facts known (or reasonably knowable) to Rezentes at that time and Rezentes did not know whether or not the two outstanding felony suspects, Plaintiff and/or Ms. Armstrong, were unarmed until they were searched after the incident.

Plaintiff's Opposition is full of emotion, but is short on material factual disputes and/or clearly established law that precluded the use of the canine in a situation like this. Plaintiff incessantly claims that she surrendered during the encounter, yet this is plainly contradicted by the undisputed video and other evidence as she was not under control while hidden amongst the bushes until Ofc. Luo took her into custody, after the canine had already been removed.  Importantly, Rezentes' view was highly obstructed during the canine contact, due to the dense bushes and trees in that immediate area (as confirmed in the video evidence), so he was unable to observe Marco's contact bite with Plaintiff's body until he was forced to enter the bushes (at his own risk since he did not know if the suspect was armed, was feigning canine contact, nor where the second suspect was located) and certainly did not know the canine made contact with Plaintiff's head until he was removing the canine from the bite. Notably, Plaintiff never advised that Marco was biting her head

to alert Rezentes of the contact bite location. Plaintiff never made any attempts to surrender whatsoever until the canine had found and bit her.  Further, the duration of the bite was not unreasonable as there were clear and serious officer safety concerns that Rezentes was confronted with due to Plaintiff's continued concealment in the bushes, she was unsearched and her motives unknown.  It should be noted that the canine was removed **prior** to handcuffing Plaintiff, another key factor in favor of qualified immunity here.  Also, whether or not the driver was wanted for assault on an officer or just hit and run, is not material to this case as well.  In sum, Rezentes' use of the canine and the reasonable duration of the bite was objectively reasonable in this incident and/or qualified immunity applies, entitling Rezentes to judgment as a matter of law.

## II.  FACTUAL COMPARISON

Notably, Plaintiff has attempted to mislead the Court as to some of the key points in the record, so Rezentes is forced to clarify on those issues herein so the Court is not fooled by these disingenuous and misrepresented citations that are not supported by the record.

| Plaintiff's Misleading Account | Factual Account of Plaintiff's Evidence |
|---|---|
| 1) "Rezentes was called and arrived on the scene at 12:40 – thirteen minutes after Sgt. Peart negated the 245." (Footnote 1) | Per the Computer Automated Dispatch (CAD) report, Sgt. Peart (call sign is W3) called Rezentes at 11:49 a.m., fifty-one minutes prior to Rezentes' arrival on scene. (Opp. Ex.2. p.2 - event 21) |
| 2) "Afterwards, Defendant Rezentes called for Talmika to bring his dog to him while the dog bit her head." (Opp. p.4:11-14). | Rezentes does not indicate that he observed Marco making contact with Plaintiff's head while he called for her to exit the bushes. (Opp. Ex. 6, 96:8-25).  He never saw that until he was removing the canine after he was forced to enter the bushes. |
| 3) "[O]fficers had actually located not just Talmika but also Ms. Armstrong prior to Defendant's K9 deployment. This is supported by video evidence from Ofc. Lou's body worn camera where Ms. Armstrong can been seen taken into custody."(Opp. p. 5:16-19) | *After* locating Plaintiff concealed within the bushes, not before, Ms. Armstrong can be observed on the video evidence appearing to surrender to the police. Ms. Armstrong is not observed on the video until after the initial contact of the canine. (Opp. Ex. 10, at 00:08.) |
| 4) "Ofc. Rezentes can be seen holding the dog leash, looking up and calling out, "Crossfire, Chief, crossfire!" (Opp. p. 6:15-19) | Ofc. Rezentes is not heard on the video yelling "Crossfire, Chief, crossfire!", that is Ofc. Lou as he had his firearm out (as Rezentes' cover officer) and was identifying the crossfire officer safety issues for other officers around. (Opp. Ex. 10, 00:02).  Further, Plaintiff submitted no evidence that Rezentes was the one making those comments.  The audio from the video clearly demonstrates this was Ofc. Lou. |
| 5) "Meanwhile Talmika was desperately | Per the video evidence, there is no account that |

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

| | |
|---|---|
| crying and screaming in pain begging for the dog to be removed from her head." (Opp. P. 7:4-5) | Plaintiff requested that the dog be removed from her head. The video only captures that she advised the dog was "biting me." (Opp. Ex. 10, 00:28-52) |
| 6) "So much so that another officer is heard screaming at Defendant Rezentes to "Do something! Do something!" (Opp. p.7:5-7) | The video captures Plaintiff responding to the command of "Do something! Do something!" with "What do you want me to do?", to get Plaintiff to get out of the bushes. The commands were clearly not directed to Rezentes. (Opp. Ex. 10, 00:52-55). |
| 7) "Talmika started crying that the dog is biting her brain and Defendant Rezentes still has not removed the dog. 00:55-1:10. Defendant Rezentes finally alerted to the officers that he is "out" at 1:12 seconds into the body worn camera." (Opp. 7:8-11) | Per the video evidence, Marco is removed from the contact bite at 1:02 seconds into the body worn camera video (Ofc. Lou's video). (Opp. Ex. 10, 00:55-1:10). Plaintiff's comments about her brain occurred after the canine was removed. |
| 8) "Defendant Rezentes was also trained to provide K9 warning before deploying his dog." (Opp. p. 7:21-22) | "Would you also agree that per the K9 use of force report review, that you're trained K9 warnings are not required by policy, but if not given, it shall be documented why it wasn't given? Yes (Rezentes' response)." (Opp. Ex. 6, 64:1-5). Canine warnings are not always required and certainly officer safety issues involved allows for that leeway per the policy. |
| 9) "POST 309.8 Removal of Canine" (Opp. p.10:13-20) | Per Plaintiff's Expert Report, this is not a Peace Officer Standards and Training (POST) guideline, but rather "another agency's" adopted Lexipol policy. (Opp. Ex. 13, p.18). This is irrelevant in this action involving Brentwood. |
| 10) "POST 317.6 Apprehension Guidelines" (Opp. p.10:24-27; 11:1-8)) | Per Plaintiff's Expert Report, the Apprehension Guidelines is the Brentwood Police Department Canine Policy (an adopted Lexipol policy) – not a POST guideline. (Opp. Ex. 13, p.19-20). |

### III. REPLY ARGUMENTS

### A.   The Limitations on Reasonable Inferences Favoring Opposing Party

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. v. Zenth Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is "material" only if proof of that fact would establish or refute one of the elements of a claim or affirmative defense at issue: thus, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude …summary judgment[;]…[f]actual disputes that are irrelevant or

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1  unnecessary will not be counted." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986);

2  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984); *In re Agric. Research & Tech. Group,*

3  *Inc*., 916 F.2d 528, 533-534 (9th Cir. 1990). **An opposing party cannot show a "genuine" dispute**

4  **of material fact by relying on the mere allegations or denials of his pleading, conclusory**

5  **allegations unsupported by factual data, legal argument by itself, or speculation.** *See*

6  *Anderson*, 477 U.S. at 248; *accord Angle v. Miller*, 673 F.3d 1122, 1134 n. 6 (9th Cir. 2012)

7  (emphasis added).  Rather, to show that there is a genuine dispute of material fact, the opposing

8  party must produce "sufficient [admissible] evidence favoring the nonmoving party for a jury to

9  return a verdict for that party." *Anderson*, 477 U.S. at 249-250.  In other words, **"a nonmovant**

10 **must do more than raise some doubt as to the existence of a fact": to show a genuine dispute**

11 **of material fact, the opposing party must produce affirmative evidence showing that the fact**

12 **as stated is untrue**. *See*, *e.g.*, *Lucas v. Leaseway Multi Transp. Serv.*, *Inc.*, 738 F.Supp. 214, 217

13 (E.D. Mich. 1990); *accord Matsushita*, 475 U.S. at 586 (opponent "must do more than simply show

14 that there is some metaphysical doubt as to the material facts") (emphasis added). When confronted

15 with a videotape of the events in question, the Court must "view the facts in the light depicted by

16 the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). And "[w]hen opposing parties tell

17 two different stories, one of which is blatantly contradicted by [the video], so that no reasonable

18 jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

19 motion for summary judgment." *Id*. at 380. In *Scott*, the Supreme Court described the events plainly

20 depicted on video and drew its own factual conclusions, without relying on expert or corroborating

21 evidence. *Id*. at 379-80. The Court held that, in light of the video, the non-moving party's attempt

22 to create a dispute of facts based on "visible fiction" should not be credited, and so it held that

23 summary judgment should have been granted in favor of the moving party. As this incident

24 happened on video, and can clearly be seen as to what happened in terms of Plaintiff's apprehension

25 from her concealed location, Plaintiff's arguments do not present a genuine factual dispute and the

26 law is in Rezentes' favor as to the Fourth Amendment and/or qualified immunity.

27

28

**B.**   **Plaintiff's Factual Basis for Conviction Was Clearly Established and Bars Her Fourth Amendment Claim per *Heck* and its Progeny**

Plaintiff's argument that Plaintiff's criminal defense counsel stipulated to the factual basis premised only on the police reports is clearly misplaced.  "[A] criminal defendant "cannot stipulate to the lawfulness" of police conduct (like the dog bite) "as part of his § 148(a)(1) guilty plea and then use the 'very same act' to allege an excessive force under § 1983." *Sanders v. City of Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021). Plaintiff incorrectly applies *Sanders*, where the criminal court referred to additional record materials (preliminary hearing testimony) to establish the factual basis for the plea. Plaintiff's acknowledgement of her plea "necessarily meant that the police use of force through to the end of [her] resistance was lawful." *Id.* at 971. Importantly, this case with Plaintiff is indistinguishable from *Sanders*, in that the criminal court in Plaintiff's case referred to the additional records – the police reports to establish the factual basis for the resisting conviction. Also, here Plaintiff confirmed at deposition that her conviction for a violation of Penal Code § 148(a)(1) (for actively resisting, obstructing and/or delaying the officers, including Rezentes), was based temporally on her entire behavior from the time she left Ulta, up until the time she was contacted by the canine from her "concealed location."  **Defendant's Exh. B**, 155:15-160:12.

Plaintiff's wholesale incorporation of the police reports as a basis for her conviction, coupled with her testimony about the temporal time of her crime up until she was located and contacted by the canine, is fatal to her excessive force claim against Rezentes. *Briseno v. City of W. Covina*, 2021 U.S. Dist. LEXIS 250197, at *13 (C.D. Cal. Dec. 23, 2021) ("The wholesale importation of the police reports into Plaintiff's guilty plea proceedings dooms this civil rights action."). In *Briseno*, in the Plaintiff's criminal plea "he and the prosecutor pointed the criminal court to the contents of the police statement that broadly covered various aspects of the chase and arrest." *Id* at 10. Similarly, Plaintiff stipulated and pointed to the contents of the police reports, including Rezentes report which spoke of the apprehension and lawful use of his canine, which was affirmed by the criminal court, as the factual basis for her resisting arrest conviction. This full importation and deposition admission dooms her excessive force claim per *Heck*.  *Id*.

Plaintiff then woefully tries to argue that when the canine made contact, she immediately

1   surrendered saying, "Ok, I'm coming out, get the dog off" and then Rezentes deployed Marco

2   again, which clearly contradicts their own arguments and is not supported by any evidence,

3   whatsoever, in the record.  The undisputed video evidence shows what while Plaintiff voiced that

4   she was coming out of her concealed location within the bushes after canine Marco made contact,

5   she never actually came out, never revealed herself, so she never actually surrendered. Plaintiff's

6   bizarre and unsupported statement that Rezentes sent Marco on a second contact bite is ___wholly___

7   ___fabricated___ as this is again contradicted by the video evidence.  Marco was deployed only once, to

8   locate and apprehend the hiding felony suspect(s) and there was no additional deployment that

9   lasted a minute after Plaintiff was taken into custody.  Importantly, Plaintiff has no facts in her

10   Operative Complaint of a second deployment after her surrender, nor is there evidence of such.

11       As stated above, Plaintiff admitted that the use of the canine was justified for Plaintiff's

12   refusal to reveal herself from her concealed position within the bushes. Opp. p. 24:16-22. It is

13   undisputed that Plaintiff never revealed herself from the bushes so she did not surrender, until, at

14   the earliest, once the canine was removed from her (the canine only had one contact).  Merely

15   voicing comments about the fact that she wanted the canine off of her (which is not even a

16   surrender), but failing to exit the bushes, is exactly what prompted Rezentes to have to enter the

17   bushes, intensifying the already present officer safety issues, to try to see what was occurring and

18   to manually remove Marco since Plaintiff did not come out as commanded numerous times.

19   Indeed, by no interpretation of the video evidence can Plaintiff's action be construed as a surrender.

20   Rezentes was unable to observe her person, her hands or even where Marco had made contact, due

21   to the dense brush and concealment of Plaintiff, especially when viewed from the perspective of a

22   reasonable officer in Rezentes shoes, the mandated perspective by the Court herein. Plaintiff's

23   attempted spin on the evidence that after her "surrender," Rezentes allowed Marco to continue to

24   bite her for another minute is clearly refuted by the video evidence. Plaintiff never appeared from

25   or came out of the bushes at any time, until after the canine had been removed, and the contact bite

26   lasted a total of about one minute, not an additional minute after that, as Plaintiff misrepresents.

27       Plaintiff's reliance on *Lemos* is distinguishable from the instant case as well.  In *Lemos*,

28   plaintiff, who was intoxicated, could have been found to be resisting the officer on any one of four

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT C22-01097 AMO

7

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

acts (1) made physical contact with the officer at the truck door, (2) placed herself between her mother and the officer, (3) when blocked the officer from opening the truck door or (4) when she pulled away from the officer just before the officer tackled her. *Lemos v. Cty. of Sonoma*, 40 F.4th 1002, 1005 (9th Cir. 2022). Here, on the other hand, Plaintiff's act of resistance was continuous from the moment she fled the store, up to where she remained concealed in the bushes and then was located and contacted by the canine.  This is confirmed via her incorporation of the police reports, including Rezentes' report, as well as deposition testimony about the temporal conduct that was included in that conviction.  Further, unlike *Lemos*, Plaintiff did not have multiple factual bases that could have been the basis of her conviction, but rather had one continuous event to which she agreed to in her criminal case, and conceded per her deposition testimony. Unlike *Lemos,* where the officer used force on two occasions, Rezentes deployed canine Marco one time where the canine only made one contact bite. Notably, Plaintiff has no admissible evidence that Rezentes deployed the canine after her surrender and, indeed, there is no evidence of Plaintiff's surrender at any time as she never came out of the bushes until after the canine had already been removed. Ultimately, Plaintiff's criminal plea, incorporating wholesale all of the police reports, including Rezentes' report, coupled with her deposition testimony that her conviction was based upon all of the conduct leading up to when the canine located and bit her, demonstrates that she cannot make out an excessive force claim in this case without directly undermining her conviction for resisting arrest. Defendant's other progeny of cases cited in the moving papers confirms and supports these arguments.  As such, *Heck* and its progeny apply here to bar her excessive force claim.

### C.    Rezentes' Deployment of the Canine Was Not Deadly Force

While the use of a canine could theoretically be deemed excessive force if the canine is not trained, nor the canine handler trained, that issue is not present here and the use of intermediate force option of the canine is not considered deadly force.  *Miller v. Clark Cty.*, 340 F.3d 959, 963 (9th Cir. 2003); *Brewer v. City of Napa*, 210 F.3d 1093, 1098 (9th Cir. 2000) ("[T]he *Garner* analysis with respect to deadly force generally does not apply to the use of police dogs.").  The Court must "first assess the quantum of force used to arrest the plaintiff by considering the type and amount of force inflicted." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    (9th Cir. 2003). "Most often, however, quantifying a particular use of force requires consideration

2    of the specific factual circumstances surrounding the event." *Seidner v. de Vries*, 39 F.4th 591, 597

3    (9th Cir. 2022). Both "[t]he nature and degree of physical contact" and the "risk of harm and the

4    actual harm experienced" are relevant. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th

5    Cir. 2022); *Ochoa v. Cty. of Kern*, 2023 U.S. Dist. LEXIS 28349, at *8 (E.D. Cal. Feb. 21, 2023).

6    Plaintiff contends that the deployment of canine Marco amounts to deadly force given she sustained

7    a scalp injury.  While admittedly Plaintiff suffered impactful scalp injuries, they ended up being

8    very superficial in nature, not even requiring any overnight hospital stay before she went to jail.

9          It should be reiterated that at the time of the canine locating and biting Plaintiff, Plaintiff

10   was an unsearched felony suspect and it was unknown if she was armed with any weapons (until

11   she was searched post-bite).  Importantly, due to Plaintiff's concealed location, Rezentes was

12   unable to observe Plaintiff's person until he was forced to enter the bushes to investigate further,

13   even at his own risk.  <u>As such, Rezentes was unable to determine that canine Marco had made

14   contact with Plaintiff's body at all, nor what part of her body</u>. Indeed, the video evidence

15   demonstrates that Rezentes did not allow Marco to make a contact bite on Plaintiff's head nor did

16   he permit the bite to unnecessarily continue. Rather, when Plaintiff failed to surrender (come out

17   of the bushes), Rezentes was forced to enter the bushes to timely remove Marco as Ofc. Luo took

18   Plaintiff into custody.  Rezentes did not know if his canine made contact and if so, what part of the

19   concealed suspect was contacted, until Rezentes entered the bushes and then manually and timely

20   removed the canine.

21         Plaintiff's unfortunate, but superficial, scalp wounds did not require any overnight hospital

22   stay, nor was Plaintiff ever close to death at any time.  Plaintiff was provided timely medical

23   attention once she was controlled and no longer a threat.  Plaintiff's injury, even though it was to

24   her scalp, did not rise to the level of deadly force as Rezentes and canine Marco were well trained

25   and Marco was an intermediate force option (like a baton, Taser or pepper spray) in this incident.

26   Unfortunately, Plaintiff was positioned so her head was closes to the area where Marco came and

27   canines will make contact with the first available body part of a subject.  Unquestionably, the

28   deployment of canine Marco, a well-trained canine with a well-trained handler, amounts to

intermediate force only, not deadly force, so that Hail Mary argument of Plaintiff falls flat.

### D.   There Is a Strong Governmental Interest Warranting the Use of a Canine to Locate and Apprehend Plaintiff, A Concealed Felony Suspect

Pointedly, Plaintiff had failed to address the *Graham* factors in full by neglecting to discuss the resisting and/or evading factor in the opposition. Perhaps this is because Plaintiff has to concede that she was resisting and/or evading the officers during her active flight and concealment, up to point when Marco located and contacted here, as bolstered by her conviction.  Further, throughout Plaintiff's opposition, she mischaracterizes the legal standard for evaluating excessive force by maintaining that the inquiry considers facts and circumstances solely at the moment of the canine contact, but failing to account for what was known to Rezentes in totality leading up to that point.

Here, Plaintiff continues to claim that she surrendered and was surrounded by multiple officers and canine units.  This is contradicted by the video evidence.  Also, Rezentes and Marco were the sole canine unit conducting a search of the tree line in that area as the other two canine units were positioned in completely different locations from Rezentes.  Moreover, Ms. Armstrong, the other concealed felony suspect, was not discovered until canine Marco located and made contact with Plaintiff who was concealed in the dense foliage.  The video evidence shows Ms. Armstrong smartly had fled from her concealed location when canine Marco made contact with Plaintiff, stayed visible and put her hands up so she could be arrested.  At that point in time, Chief Christenson is observed in the video engaging with Ms. Armstrong.  The undisputed evidence demonstrates that Plaintiff was not surrounded by numerous officers and/or canine units. Notably, Plaintiff had absconded into a nearby populated area, furthering an immediate threat, and evaded the officers for an extended period of time as well, giving her advantages of a potential ambush or plan in that time.

"[A] law enforcement officer's use of force will be justified, or not, by what that officer reasonably believed about the circumstances confronting him." *Price v. Sery*, 513 F.3d 962, 968 (9th Cir. 2008). From Rezentes' perspective, he encountered an unknown suspect (Plaintiff), one of two outstanding felony suspects, who was unsearched and had fled and had concealed themselves to avoid apprehension by law enforcement. At the time of contact with Plaintiff, Rezentes was completely unaware that Ms. Armstrong had started to exit the bushes toward the rear of the tree

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

line and out of Rezentes view, as Rezentes was focused on his canine and the suspect right in front of him, unsearched and hiding in the dense bushes. Further, Rezentes' uncertainty as to the presence of weapons furthered the threat posed by multiple hidden felony suspects (Plaintiff and Armstrong). Under the totality of circumstances, Plaintiff posed an objectively reasonable threat and Rezentes has a strong governmental interest in maintaining public safety to include safety of himself and other officers. *Mehta v. City of Upland*, 748 F.App'x 739, 742 (9th Cir. 2018)("[T]he government had a strong interest in arresting those suspected of committing felonies and in protecting the safety of the offices and public."). Thus, a reasonable jury could find that there is a strong governmental interest justifying the intermediate use of force in the Rezentes' deployment of canine Marco. This contact did not violate the Fourth Amendment.

**E.**   **There Is No Clearly Established Law That Put Rezentes on Notice that His Deployment of Canine Marco To Apprehend a Concealed Felony Suspect Was Unconstitutional**

"The Plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021). "To be clearly established, a legal principle must have a sufficiently clear foundation in then existing precedent. The rule must be 'settled law,' which means it is dictated by 'controlling authority.'" *D.C. v. Wesby*, 138 S.Ct. 577, 589-90 (2018). **"When a rule is merely 'suggested' by precedent it is not clearly established."** *DePaul Indus.v. Miller*, 14 F.4th 1021, 1026 (9th Cir. 2021) (emphasis added). In *White v Pauly*, 137 S.Ct. 548 (2017), the Supreme Court reiterated that general rules on force are at a too high a level of generality to provide "fair warning." Outside of "an obvious case" and without requiring "a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitution question beyond debate." *Id.* at 551 (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).

There is case law that demonstrates clearly that the use of the canine here was lawful, giving Rezentes notice that he complied with the Fourth Amendment in the dangerous, tense and dynamic situation to which he was faced. Recently, in *Hernandez*, the video evidence showed that during a DUI investigation on Hernandez, Hernandez failed to comply with numerous commands to exit his vehicle which resulted in the officer's use of pepper spray, which failed, and then the canine was

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

used and bit Hernandez. *Hernandez v. Town of Gilbert*, 989 F.3d 739, 742-47 (9th Cir. 2021). Hernandez resisted the canine and then, ultimately, the canine was removed after almost a fifty second bite, and the officers had to then physically extract Hernandez from the vehicle. *Id.* The Ninth Circuit found that Hernandez, who fled officers, was not under control and failed to surrender, and was an unsearched felony suspect. *Id.* at 744-745. Also, though Hernandez said "alright" during the bite, he did not abide by commands to come out of the car. Overall, the officer in *Hernandez* was provided qualified immunity. Like the officer in *Hernandez*, dealing with a concealed, unsearched subject who was not completely controlled, Rezentes was facing the same challenges and risks, demonstrating that his conduct was lawful and/or he is entitled to qualified immunity. The bite length of Plaintiff was also close to the time of the bite in *Hernandez* that was deemed lawful, despite the fact that the officer in *Hernandez* had better sight of the suspect in the car than Rezentes had as he was dealing with a concealed subject in dense bushes.

Other cases prove qualified immunity should attach herein at a minimum. *Mendoza v. Block*, 27 F.3d 1357, 1358-1363 (9th Cir. 1994) (holding that use of police dog to find and secure bank robbery suspect who fled and hid in bushes for several hours, which resulted in two dog bites, securing him with a bite until he was handcuffed, was objectively reasonable). Here, Rezentes removed the canine from the bite even before Plaintiff was handcuffed. Other Ninth Circuit cases have repeatedly upheld the use of biting police dogs on hiding suspects per the Fourth Amendment standards. *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022); *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003). These cases make it clear that Rezentes is entitled to qualified immunity.

On the other hand, despite it being their burden on this motion, Plaintiff's case citations to try to demonstrate that Rezentes violated clearly established law, beyond all debate, all fall flat. This is even more true since we know Plaintiff has conceded that the **"Defendant's initial deployment of the dog may be justified on Plaintiff's refusal to reveal herself from a concealed location and validates the 148(a)(1) plea."** Opp. p. 24:16-17.

For example, in *Sweiha*, a District Court case, not Ninth Circuit case, and a case following Plaintiff's incident, so is not really precedent for qualified immunity purposes, the court found a factual issue as the video evidence showed that Sweiha, who just threatened to kill a bedridden

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

priest with a metal object and would stab the police dog, ultimately put his hands up and began to apologize saying he was sorry as he was moved into the prone position for handcuffing, while the canine continued on the contact bite and the canine was removed after Sweiha was handcuffed. *Sweiha v. Cty. of Alameda*, 2021 U.S. Dist. LEXIS 16681, at *3-5 (N.D. Cal. Jan. 28, 2021). There is absolutely no similarity in *Sweiha* to this case as Rezentes timely removed Marco prior to handcuffing and Plaintiff was never visible to Rezentes until he was removing the canine. Further, in *Hartsell*, another case after Plaintiff's arrest, the officer deployed the canine into the bushes where Hartsell had fled and bit his left arm. *Hartsell v. Cty. of San Diego*, 2023 U.S. App. LEXIS 7417, at *1-2 (9th Cir. Mar. 29, 2023). However, Hartsell complied with the officer's commands to show his hands after he was bitten, indicating he was surrendering, but then ordered him to crawl several feet out of the bush before removing the canine. *Id.* Here, while Rezentes did order Plaintiff to exit the bushes during the canine contact, he could not see her body or hands as she never revealed herself, so Rezentes could not confirm that she was not a threat, unlike the officers in *Hartsell* who saw the suspect reveal his hands per commands to do so, indicating he was surrendering.

Also, in *Watkins,* the officers responded to a commercial burglary alarm where the officer deployed the canine to locate Watkins. *Watkins v. City of Oakland*, 145 F.3d 1087, 1090 (9th Cir. 1998). The canine located Watkins hiding in a car and made a contact bite. *Id.* The officer ordered Watkins to show his hands, but he failed to comply as he stated he could not comply due to the canine bite. The officer pulled Watkins out of the car onto the ground while the canine continued to bite until he showed his hands. *Id.* The court found a genuine issue as to whether or not Watkins surrendered as he claimed he could not comply due to the actual bite. This case bears little resemblance to the circumstances facing Rezentes, especially since Rezentes could not see Plaintiff until he entered the bushes and got his canine off the bite.

Plaintiff cites to *Dawson* which is also distinguishable. In that case, unlike the instant case, plaintiff was subdued by the canine and then complied with the officer's commands to move onto his stomach as the canine maintained the bite. *Dawson v. Cty. of Stanislaus*, 2023 U.S. Dist. LEXIS 26522, at *23-24 (E.D. Cal. Feb. 15, 2023). Here, Plaintiff never physically complied, she remained hidden in the thick bushes and, unlike the plaintiff *Dawson,* Plaintiff did not comply with verbal

commands during the canine bite to reveal herself. *Id.* Plaintiff alleges the Rezentes allowed Marco to remain on the bite after she surrendered, for an additional 45 seconds, but there is no evidence that Plaintiff physically surrendered and that is not at all seen on the key video from Ofc. Luo. Plaintiff fails to demonstrate how a reasonable officer in the shoes of Rezentes would interpret Plaintiff's continued concealment and failure to follow commands to come out with the canine, so Rezentes could see if she was armed or not per the training of Rezentes, as any form of surrender. While admittedly the Ninth Circuit has stated that an officer cannot direct a police dog to continue biting a suspect who has **<u>fully surrendered and is under the officer's control</u>**, citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (emphasis added), Plaintiff never fully surrendered (meaning came out of the bushes to be controlled), nor was she ever under Rezentes' control until after the canine was removed and Ofc. Luo was able to approach with his firearm at the ready. Plaintiff never came out of her concealed location until after the canine was removed and, in fact, Rezentes had to go into the dense bushes to deal with this situation. Plaintiff was never under control until after the canine had already been removed. Neither Plaintiff's actions, nor any comments made by Plaintiff, indicated she had fully surrendered to a reasonable officer and an officer in Rezentes' shoes could not even see into those bushes until such time as the officer had to risk his own safety and enter the bushes to survey the situation, then take command of the canine. <u>Notably, the canine was removed even before Plaintiff was ever handcuffed</u>, weighing in favor of Rezentes and also different than most of the cases cited by Plaintiff.

Plaintiff also cites to *Rosenbaum* which is distinguished by the fact that the officers had a clear visual of plaintiff during the canine contact and the canine remained on the bite after plaintiff was under the officer's control. *Rosenbaum v. Dunn*, 2022 U.S. Dist. LEXIS 224010, at *5-7 (N.D. Cal. Nov. 28, 2022). Here, Plaintiff was not under control until after Rezentes removed canine and was able to witness that Plaintiff was not armed and did not appear to be any further threat to him or other nearby officers, as covered by Ofc. Luo with his firearm as well. Plaintiff's other purported cases to prove clearly established law also fail as they do not involve canines. *Hope* involved a prison inmate handcuffed twice to a hitching post as a form of punishment. *Hope v. Pelzer*, 536 U.S. 730, 733 (2002). *Martin* involved an officer using his patrol vehicle to hit a suspect. *Martin v.*

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

*City of San Jose*, 2020 U.S. Dist. LEXIS 185281, at *1-11 (N.D. Cal. Oct. 6, 2020).

Further, a warning to the concealed and unknown Plaintiff was not required here per the Fourth Amendment. *Escobar v. Montee*, 895 F.3d 387, 395-96 (5th Cir. 2018); *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009); T*homson v. Salt Lake County*, 584 F.3d 1304, 1321 (10th Cir. 2009); *Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009). Even if the law can be shown to be clearly established, despite Plaintiff not citing to one case that is remotely similar to the difficult and dangerous situation facing Rezentes, nor a robust consensus of cases showing a clear violation, beyond debate, a reasonable canine officer would have not known he was violating Plaintiff's rights in this intermediate use of force to locate and apprehend a concealed, unsearched felony suspect who was evading arrest and hiding in deep bushes. Even if Rezentes was arguably mistaken about the length of the bite here, he is entitled to <u>breathing room</u> to make reasonable but mistaken judgments, especially in this dangerous backdrop. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (emphasis added). As such, Rezentes is entitled to qualified immunity on Plaintiff's Fourth Amendment claim should *Heck* not bar it.

## IV.  OBJECTIONS TO PLAINTIFF'S EVIDENCE

Plaintiff did not object to any of the Defendant's evidence so all that evidence is properly before the court. However, Defendant objects and requests this Court strike the following evidence:

| Evidence | Objection by Defendants |
|---|---|
| Ex.8, Still Frames | Defendant objects to this as irrelevant and prejudicial per FRE 401-403, speculative per FRE 602 and improper hearsay per FRE 801 et seq. Rezentes was not able to freeze frame the incident, making these freeze frames improper for any qualified immunity analysis. |
| Ex.12, Angelone's R26 Report; Ex.13, Burwell's R26 Report | Defendant objects to Plaintiff's submitted expert reports in full, despite limited citation to admissible opinions. These opinions should be excluded as speculative per FRE 602, irrelevant and prejudicial per FRE 401-403 and improper expert opinions per FRE 702. Burwell also cites to unknown documents as well. |

## V. CONCLUSION

Plaintiff's case is clearly barred by *Heck* as otherwise her conviction is significantly undermined. If it is not barred, Rezentes is entitled to judgment as a matter of law for his use of the canine in an objectively reasonable manner and/or is entitled to qualified immunity.

///

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1    The undersigned attests that permission in the filing of this document(s) has been obtained

2    from the signatory below which shall serve in lieu of the actual signatures on the document(s).

3    Dated:  June 29, 2023                    MᴄNᴀᴍᴀʀᴀ, Aᴍʙᴀᴄʜᴇʀ, Wʜᴇᴇʟᴇʀ,
                                              Hɪʀsɪɢ & Gʀᴀʏ LLP
4

5                                             By:    /s/ Noah G. Blechman
6                                                    Noah G. Blechman / John J. Swafford
                                                     Attorneys for Defendant RYAN REZENTES
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MᴄNᴀᴍᴀʀᴀ, Aᴍʙᴀᴄʜᴇʀ, Wʜᴇᴇʟᴇʀ, Hɪʀsɪɢ & Gʀᴀʏ LLP
ᴀᴛᴛᴏʀɴᴇʏs ᴀᴛ ʟᴀᴡ
3480 ʙᴜsᴋɪʀᴋ ᴀᴠᴇɴᴜᴇ, sᴜɪᴛᴇ 250, ᴘʟᴇᴀsᴀɴᴛ ʜɪʟʟ, ᴄᴀ 94523
ᴛᴇʟᴇᴘʜᴏɴᴇ: (925) 939-5330